Matilda HAAS, Charles Haas, as husband;
Charles Haas, individually; and Wil-
liam Haas, Plaintiffs,

v.

Harriet S. PENDLETON, Defendant.

Superior Court of Delaware,
New Castle.

Dec. 3, 1970.

Garry Greenstein and Martin A. Schag-
rin, of Knecht, Greenstein & Berkowitz,
Wilmington, for plaintiffs.

Wayne Elliott, of Prickett, Ward, Burt
& Sanders, Wilmington, for defendant.

STIFTEL, President Judge.

There were three plaintiffs. I directed
a verdict on liability against the defendant
in favor of each plaintiff. The jury re-
turned verdicts as follows:

| | |
|---|---|
| (a) Charles Haas | $1,200 |
| (b) Matilda Haas | 400 |
| (c) William Haas | 170 |

Plaintiffs moved for new trial claiming
great inadequacy. During argument,
Charles Haas, the driver, withdrew his re-
quest. The motion remains as to Matilda
and Charles.

■ Only in the exceptional case will
the court move to interfere with a jury ver-
dict. Where, however, the amount awarded
is inconceivable on the facts, this court will
act to avoid an injustice.

■ A jury has great latitude. It can
accept or reject, in whole or in part, a
plaintiff's evidence and fix its verdict upon
the basis of that portion of the testimony
it chooses to accept. See Chavin v. Cope,
Supr.Ct., 243 A.2d 694, 698. But it cannot

totally ignore facts that are uncontroverted and against which no inference lies.

*Matilda Haas*

■ Defendant admitted she owed $30 for the x-ray. She admitted that $128 for lost wages was reasonable but required the plaintiff to prove that her time off from work was necessary. Mrs. Haas had suffered a whip-lash injury a year before this accident, in 1966, in another automobile accident.

Dr. Harry P. Scally's testimony was by deposition. Dr. Scally, on direct, strongly emphasized Mrs. Haas' many injuries and said that they came from this accident. The defendant's attorney conducted an effective cross-examination and most of Dr. Scally's positive statements about his patient's injuries disappeared. Further the doctor agreed with almost any downgrading of the injuries that defendant's lawyer suggested. The doctor agreed that the tendonitis calcarea, the straightening of the cervical lordosis, and her arthritic changes could have pre-existed the accident. The doctor admitted that the sclerotic bone to the right of the femoral head in the pelvic region, suggestive of a "bone island", could not be definitely traced to this accident.

However, defendant's attorney admitted that Mrs. Haas did suffer some injuries. In Dr. Scally's deposition, the attorney asked the doctor:

"Q. So basically, other than a sprain, Mrs. Haas had no lingering effects from the accident?" (Tr. pp. 64–65)

The word mentioned by defendant's attorney was "sprain". However, there were several sprains mentioned by Dr. Scally, which he considered to have been caused by this accident. When the attorney mentioned "sprain", in all probability he was referring to the sprain injuries. Dr. Scally testified that:

"She had a sprain of the cervical spine with brachial neuralgia * * *; sprain

of the right groin; sprain and contusion of the left ankle; sprain of the dorsal spine." (Tr. pp. 49–50)

The jury could have believed from the doctor's testimony that much of her pain was feigned and that 57 visits to the doctor were overdone or that both could have been attributed substantially to her pre-existing difficulties. Nevertheless, the jury could not ignore the fact that the enumerated sprains did exist and that they did cause her pain and discomfort. Some of the sprains may, of course, be considered minimal, such as that to the right groin and the left ankle. However, the sprains to the cervical and dorsal region should not have been treated as de minimus. Even though there is no general description or medical explanation in the record of the significance of a sprain in the dorsal and cervical region, nevertheless, the nature of such injuries is fairly well understood by this court. These types of injuries are not to be dismissed as insignificant. Her descriptions of her pain and the doctor's explanation of her restricted motion of her neck deserve some consideration. Even though she could have feigned pain to the doctor for her benefit and invented artificial restrictions to some degree, it is unlikely that this would have remained totally undiscovered by the doctor through his many examinations. At least, he gave no indication that he did not believe her or that she was a malingerer.

Even though the doctor stated that he could not say Mrs. Haas' residual headaches were caused by the second accident, he did say that they were aggravated by the later accident. (Tr. p. 64).

Also, the doctor recommended that she stay off from work for two weeks, which she did, at a loss of wages of $128. The jury had a right to believe that all this time off was unnecessary; however, not that none of it was necessary.

With the admission of the x-ray as a reasonably necessary expense, the total verdict for Mrs. Haas was $370. I conclude that

this amount was shockingly low on the facts and consequently order a new trial on damages.

### *William Haas*

 William Haas visited Dr. Scally 52 times. The doctor diagnosed his automobile accident problems as a "sprained cervical spine with brachial neuralgia radiating in the right upper extremity and nervous shock." Treatment consisted of manipulation, medication and short-wave diathermy. There was no permanent injury from the accident but the doctor said Mr. Haas will suffer from pain and stiffness intermittently in the future.

Mr. Haas had cervical difficulties that pre-existed the accident. There was a fusion of the superior and inferior articular facets. In other words, the second, third and fourth cervical were joined and he had degenerative spondylitic changes posteriorly noted to the level of C4, 5 and 6. Even though the doctor said that these conditions pre-existed the accident, he also explained that their presence could slow the healing process of the cervical sprain. He indicated that the sprain and restricted cervical motion were caused by this accident. While admitting the diagnosis to a great extent depends upon the truthful cooperation of the plaintiff, he did say that he believed William's pain and restricted motion were real and not feigned and some muscle spasm was noted. Also a restriction of cervical mobility was seen on the flexion x-ray film. Even on Mr. Haas' last visit, the doctor said he was still having difficulty.

Mr. Haas' medical expenses were $275. $30 for x-ray was admitted. Thus, the jury awarded Mr. Haas $140 for his injuries and pain. I find this small sum for the injuries and pain inconceivable and shockingly inadequate and order a new trial on damages.